1

Magistrate Judge Michelle L. Peterson

2

3

4

5

6

7 UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
8 AT SEATTLE

9

10 UNITED STATES OF AMERICA,      NO. MJ21-032

11        Plaintiff

12        COMPLAINT FOR VIOLATIONS

13        18 U.S.C. § 1513(b)(2)
       v.        18 U.S.C. § 844(h)(1)

14

JORDAN DESMOND SANCHEZ,
15

16        Defendant.

17

18      BEFORE the Honorable Michelle L. Peterson, United States Magistrate Judge,

19 United States Courthouse, Seattle, Washington.

20      The undersigned complainant being duly sworn states:

21      **COUNT 1**

22      **(Obstructing Justice by Retaliating Against an Informant)**

23      On or about November 20, 2020, in King County, within the Western District of

24 Washington, JORDAN DESMOND SANCHEZ knowingly engaged in conduct that

25 damaged the tangible property of a confidential informant (CI-1), namely, setting CI-1's

26 car on fire, with the intent to retaliate against CI-1 for information given by CI-1 to a law

27 enforcement officer relating to the commission of a federal offense.

28      All in violation of Title 18, United States Code, Section 1513(b)(2).

COMPLAINT / SANCHEZ - 1
USAO #2020R00604

## COUNT 2

### (Use of Fire to Commit a Felony)

On or about November 20, 2020, in King County, within the Western District of Washington, JORDAN DESMOND SANCHEZ used fire to commit a felony which may be prosecuted in a court of the United States, namely, *Obstructing Justice by Retaliating Against an Informant*, as alleged above in Count 1.

All in violation of Title 18, United States Code, Section 844(h)(1).

The undersigned complainant, J. Benjamin Hunt, being duly sworn, further deposes and states as follows:

### INTRODUCTION

1.       I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Seattle I Field Office.  As such, I am a law enforcement officer of the United States with the power to serve subpoenas and warrants issued under the authority of the United States and to make arrests for offenses against the laws of the United States, as codified in Title 18 of the United States Code, Section 3051.  I have been a Special Agent with the ATF since August 2004.  Prior to my work for the ATF, I attended law school, served as an intern in the United States Department of Justice and later worked as an attorney in the District of Columbia.

2.       Upon my employment with the ATF, I completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ATF National Academy's Special Agent Basic Training in Glynco, Georgia, in 2005. Originally assigned to the ATF New York Field Division, I worked in the Joint Firearm Task Force in New York Group V and later New York Group I, a gang investigation group.  Both groups were located in Brooklyn.  In 2010, I transferred to Seattle, Washington, where I have worked in ATF Seattle V, Violent Gang Task Force, and now in Seattle Group I, Puget Sound Regional Crime Gun Task Force South.  I have subsequently completed training with the NYPD regarding Homicide Investigations,

COMPLAINT / SANCHEZ - 2
USAO #2020R00604

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  ATF's Complex Investigations and Advanced Complex Investigations schools. I am a

2  member of the ATF's Enhanced Undercover Program and have worked extended details

3  in Southern California, Central California, Portland, Oregon, and Baltimore, Maryland.

4       3.     During my professional experience I have conducted and participated in

5  numerous investigations regarding the illegal possession of firearms, firearm trafficking,

6  violent crime and narcotics. I have participated in undercover operations, Title III

7  wiretrap investigations and the execution of search warrants associated with investigative

8  targets and the execution of the arrest warrants on those investigative targets. I have

9  conversed at length with investigative targets in an undercover capacity and overtly as a

10  law enforcement officer in formal interviews. I have conducted undercover purchases of

11  firearms and ammunition, grenades, cocaine, crack cocaine, heroin, methamphetamine,

12  fentanyl and other opioid pills. In an undercover capacity, I have been involved in

13  money laundering investigations and I have investigated bulk cash smuggling as well.

14  The vast majority of my investigative experience has involved organized entities from

15  Criminal Street Gangs to International Drug Trafficking Organizations and Terror

16  Groups. As such, I am familiar with the modus operandi of those conducting violent

17  crime and narcotics related crimes with firearms and firearm trafficking. I am also

18  familiar with the manner in which drug traffickers use telephones, often cellular

19  telephones, to conduct their unlawful operations, and how they code their conversations

20  to disguise their unlawful activities.

21       4.     This affidavit is made based upon my personal knowledge, training,

22  experience and investigation, as well as upon information provided to me and my review

23  of reports prepared by other law enforcement personnel. This affidavit is made for the

24  purpose of establishing probable cause for this Complaint and thus does not include each

25  and every fact known to me concerning this investigation.

26                      **INVESTIGATION AND PROBABLE CAUSE**

27       5.     From May 26, 2020 to August 11, 2020, agents and investigators of ATF,

28  HSI, DEA and the King County Sheriff's Office conducted an investigation into David

COMPLAINT / SANCHEZ - 3
USAO #2020R00604

1    ROSARIO, a.k.a. JUNE, a.k.a. JUNEBUG, for firearms and narcotics violations.  The

2    investigation began when a confidential informant (CI-1) told investigators that

3    ROSARIO sold pound-quantities of heroin and methamphetamine and also sold

4    firearms.[1]  CI-1 introduced me to ROSARIO while I was acting in an undercover

5    capacity.

6           6.      During the investigation, ROSARIO sold me four firearms on four different

7    dates:  May 29, 2020, June 15, 2020, June 27, 2020, and July 21, 2020.  On May 29,

8    2020, ROSARIO also sold me approximately 53 grams of heroin and approximately

9    15.1 grams of methamphetamine, while armed with a pistol.  On another occasion, June

10   8, 2020, ROSARIO sold me approximately 28.4 grams of methamphetamine and no

11   firearms.

12          7.      Additionally, on May 29, 2020, ROSARIO sold 100 M/30 pills (suspected

13   fentanyl) to CI-1.  On June 8, 2020 ROSARIO sold 50 M/30 pills (suspected fentanyl) to

14   CI-1.[2]

15          8.      On August 10, 2020, the Honorable Mary Alice Theiler, United States

16   Magistrate Judge, issued an arrest warrant for ROSARIO and search warrants for

17   ROSARIO's vehicles and a residence in Federal Way.  *See* MJ20-512 (Complaint);

18   MJ20-513 (Vehicle Search Warrant); MJ20-514 (Residence Search Warrant).  These

19   warrants were executed on August 11, 2020, at a motel in SeaTac, Washington.  When

20   agents searched one of ROSARIO's vehicles, they recovered a firearm that ROSARIO

21   had offered to sell me.

22

23

24

_____

25   [1] CI-1 has juvenile felony convictions for crimes of dishonesty, specifically, attempted burglary and theft of a motor

26   vehicle.  CI-1 assisted law enforcement in exchange for law enforcement's agreement not to refer criminal charges
     arising out of an incident where he/she was stopped by police and found to be in possession of narcotics.

27   [2] The heroin and methamphetamine field-tested positive and have been sent to a Drug Enforcement Administration

28   laboratory for further analysis.  The fentanyl could not be field-tested and has been sent to a Drug Enforcement
     Administration laboratory for analysis.

9.      After ROSARIO was arrested, agents obtained a search warrant for another vehicle and two hotel rooms connected to ROSARIO and his associates. *See* MJ20-518. These search warrants resulted in the seizure of additional firearms.

10.     ROSARIO had an initial appearance before the United States District Court for the Western District of Washington on August 11, 2020, and received a copy of the Complaint. My identity as an undercover officer and CI-1's identity as the person who introduced me to ROSARIO would have been immediately apparent to ROSARIO from the details of the drug and firearms transactions described in the Complaint.

11.     On August 18, 2020, ROSARIO was released on an appearance bond to the third-party custody of his father, David Rosario Sr. who resides at 3025 Northeast 7th Street in Renton, Washington.  In relevant part, the appearance bond required that ROSARIO:

- Provide Pretrial Services with his current address and phone number, and not change residence without the approval of Pretrial Services;
- Not commit a federal, state, or local crime during the period of his release;
- Not harass, threaten, intimidate, tamper with, improperly influence, or injure the person or property of witnesses, jurors, informants, victims of crime, judicial officers or other persons related to official proceedings before the court in violation of Title 18 U.S.C. §§ 1503, 1512 and 1513; and
- Not possess firearms.

12.     On August 20, 2020, a grand jury in the Western District of Washington returned an indictment charging ROSARIO with two counts of distributing controlled substances, in violation of 21 U.S.C. § 841(a)(1), and one count of carrying firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  His trial is scheduled for April 12, 2021. *See* CR20-133 RAJ.

### Threats Against CI-1

13.     Shortly after ROSARIO's release, I learned from CI-1 that ROSARIO was not in the custody of David Rosario Sr., but that he was living with friends who had been

1  involved with ROSARIO during several of the undercover sales of firearms and
2  narcotics during the aforementioned investigation.  CI-1 told me that he/she had been
3  warned that ROSARIO would try to hurt or kill him/her.  CI-1 has been reluctant to
4  provide details about the people providing him/her with information about ROSARIO
5  for fear of further retaliation.

6    14.    On November 20, 2020, between 3:00 a.m. and 4:00 a.m., a resident of CI-
7  1's apartment complex, reported a fire in the carport of the apartment complex.  The
8  apartment complex is located in King County, Washington.  King County fire fighters
9  responded and extinguished the fire, which had severely burned a 1993 Pontiac Z28,
10  convertible belonging to CI-1 and damaged several vehicles parked to the sides of CI-1's
11  vehicle.  I learned from the Supervisor of the King County Sheriff's Office's Arson Unit
12  that the fire endangered the entire building and likely would have resulted in death if
13  King County Fire Rescue had arrived any later.

14    15.    CI-1 has insisted that, aside from ROSARIO, he/she is not aware of anyone
15  else who has threatened him/her or would be motivated to harm him/her.

16                              **Arrest of ROSARIO**

17    16.    On January 11, 2021, the Honorable Michelle L. Peterson, United States
18  Magistrate Judge, issued a search warrant for ROSARIO's person, the GMC Yukon, and
19  the apartment unit he shared with RONDINO, located at 6512 35th Avenue Southwest,
20  Apartment 208, in West Seattle.  MJ21-011.

21    17.    At approximately 2:00 p.m. on January 11, 2021, agents located ROSARIO
22  and attempted to execute the search warrant.  ROSARIO was driving the GMC Yukon
23  with Shelby RONDINO and her sister Sierra Rondino in the vehicle. They made a short
24  stop at the residence of James French at 6527 21st Avenue in Seattle then drove
25  southbound rounding a corner where the street turned into Myrtle Street. At that point,
26  unmarked law enforcement vehicles, both immediately in front and behind ROSARIO's
27  vehicle, initiated their emergency lights and sirens. ROSARIO then evaded both cars
28  accelerating at a very high rate of speed, going around the vehicles, and running over and

COMPLAINT / SANCHEZ - 6
USAO #2020R00604

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 │ through several construction barricades. Two King County Sheriff's Office (KCSO)

2 │ marked vehicles then initiated their lights and sirens pulling behind ROSARIO but

3 │ ROSARIO dodged and weaved through vehicles. Since ROSARIO had by then reached a

4 │ heavily populated area with dense traffic, the law enforcement officers did not give

5 │ chase.

6 │      18.    At approximately 2:30 p.m., agents located the GMC Yukon, which had

7 │ been abandoned at 35th Street and Othello. Agents observed Shelby RONDINO and her

8 │ sister walking separately in the area of the vehicle. Agents then contacted the vehicle,

9 │ breached the rear driver's side window (every window in the vehicle had limousine tint

10 │ including the windshield) so they could see inside. The agents found the vehicle

11 │ unoccupied. KCSO marked units then secured the vehicle and had it towed to KCSO's

12 │ 4th Precinct, where agents later conducted a search of it pursuant to the federal warrant.

13 │      19.    At approximately 5:10 p.m., agents received information that ROSARIO

14 │ had returned to his father's residence in Renton. Agents arrested ROSARIO at that

15 │ location at approximately 5:40 p.m.

16 │      20.    ROSARIO was transported to KCSO's 4th Precinct where agents advised

17 │ him of his constitutional rights. ROSARIO agreed to waive those rights and speak to

18 │ agents. During a video- and audio-recorded interview, ROSARIO denied involvement in

19 │ the arson of CI-1's car but admitted that his cellphone may contain a photograph of the

20 │ burned car. He said that the photograph was on his girlfriend's sister's (Sierra

21 │ Rondino's) phone, and he took a photograph of that photograph.

22 │      21.    ROSARIO stated that he knew who set the fire and told the agents, in sum,

23 │ that it was a friend of his named "Jordan". Referring to CI-1, ROSARIO stated, "I think

24 │ he [Jordan] just doesn't like [CI-1] because [CI-1] told on me." From other information

25 │ gathered during this investigation, I knew "Jordan" to be Jordan Desmond SANCHEZ.

26 │ **Interviews of Esther Fernandez and Jordan SANCHEZ**

27 │      22.    Det. Eshom and I were aware that Jordan SANCHEZ had an active arrest

28 │ warrant issued by Kent Municipal Court for first-degree trespass. We located SANCHEZ

COMPLAINT / SANCHEZ - 7
USAO #2020R00604

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  sitting in a vehicle in front of his residence in Tukwila.  We arrested SANCHEZ, placed
2  him in a King County Sheriff's Office patrol car, and transported him to the King County
3  Sheriff's Office 4th Precinct.

4       23.    While we were contacting SANCHEZ, his girlfriend, Esther Fernandez,
5  came outside the residence to see what was happening.  Det. Eshom said, "I think you
6  know what this is about."  She said, "Yeah, I think I do."  She said she wanted to come
7  with us to the Precinct to talk about it.  Det. Eshom and I drove her to the Precinct in an
8  unmarked ATF vehicle.

9       24.    Det. Eshom and I first interviewed Fernandez.  I advised her that she was
10  not under arrest, she was free to leave at any time, and she was not obligated to speak to
11  us.  Fernandez agreed to talk to us.  She told us what SANCHEZ had told her about his
12  conversations with ROSARIO, whom she referred to by his nickname, "June."  She had
13  not heard ROSARIO discuss these matters personally.

14       25.    In sum, SANCHEZ told her that he and ROSARIO had discussed CI-1's
15  cooperation with law enforcement.  SANCHEZ told her that ROSARIO wanted him to
16  set CI-1's car on fire and that ROSARIO would pay him for it.  She stated that
17  ROSARIO identified CI-1's car for SANCHEZ, and SANCHEZ "scoped out" CI-1's car
18  and apartment complex before the fire.  She stated that ROSARIO did not want anyone to
19  know that he was behind the fire.

20       26.    After the fire, SANCHEZ told her that he burned the car.  She saw a
21  photograph of the burned car that SANCHEZ had on his phone.  ROSARIO paid
22  SANCHEZ 10 pills (fentanyl) that were worth a total of approximately $100.00, and
23  others who knew about the fire felt that ROSARIO should have paid SANCHEZ more.

24       27.    Fernandez said that SANCHEZ set the fire as "retaliation" or "payback."
25  Fernandez stated that ROSARIO and SANCHEZ had also discussed a plan to kill CI-1.

26       28.    Det. Eshom and I also interviewed SANCHEZ.  I told SANCHEZ who I
27  was, that I was investigating the arson of CI-1's vehicle, that I had arrested ROSARIO,
28  and that ROSARIO had implicated him in the vehicle fire.  I showed SANCHEZ the

COMPLAINT / SANCHEZ - 8
USAO #2020R00604

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    video of ROSARIO's interview so that he would know I was telling the truth. While

2    watching the video, SANCHEZ blurted out, "He paid me to do it!" We stopped him,

3    advised him of his *Miranda* warnings, and reiterated that he did not have to talk to us.

4          29.     SANCHEZ said he wanted to talk to us. He admitted that he set the fire

5    and that ROSARIO paid him to do it. Specifically, SANCHEZ said he filled a beer bottle

6    with gasoline from a gas station, stuffed a rag into the bottle, lit the rag on fire, and threw

7    the bottle into the car. I know from my training and experience that this kind of

8    contraption is commonly referred to as a Molotov cocktail. Afterward, ROSARIO paid

9    SANCHEZ 10 M/30 "Percocet" pills worth approximately $100.

10        30.     SANCHEZ said that ROSARIO wanted retaliation for CI-1 "snitching on

11    him," and ROSARIO wanted CI-1 "to pay for what he did." ROSARIO said that he did

12    not want CI-1 to be "mobile," meaning able to drive around. SANCHEZ offered to

13    throw a Molotov cocktail into CI-1's car. ROSARIO gave SANCHEZ the information

14    about CI-1's cars and told SANCHEZ which apartment CI-1 lived in. ROSARIO drove

15    SANCHEZ by the apartment. SANCHEZ did not know CI-1; he said that he set the fire

16    to earn ROSARIO's respect, and for the pills.

17                                **CONCLUSION**

18        31.     Based on the foregoing, I respectfully submit that there is probable cause to

19    believe that JORDAN SANCHEZ committed the crimes of Obstructing Justice by

20    Retaliating Against an Informant, in violation of Title 18, United States Code, Section

21    1513(b)(2), and Use of Fire in Commission of a Felony, in violation of Title 18, United

22    States Code, Section 844(h)(1).

23

24

25

26                                  J. BENJAMIN HUNT, Complainant,

                                  Special Agent, ATF

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   The above-named agent provided a sworn statement attesting to the truth of the

2   contents of the foregoing affidavit on the 21st day of January, 2021.  Based on the

3   information contained in this affidavit, the Court hereby finds that there is probable cause

4   to believe the Defendant committed the offenses set forth in the Complaint.

5

6

7   _____

8   HON. MICHELLE L. PETERSON
    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT / SANCHEZ - 10
USAO #2020R00604